# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

BBC

U.S. District Court
Wisconsin Eastern

JUL 23 2026

FILED
Clerk of Court

**ADAM STURDEVANT, Plaintiff,**

**v.**

Civil Action No. 26-CV-1294

**UNITED STATES OF AMERICA, Defendant.**

## COMPLAINT FOR DAMAGES

(Federal Tort Claims Act – 28 U.S.C. §§ 1346(b), 2671–2680)

### SECTION 1 — NATURE OF THE ACTION

1. This is a civil action for money damages brought against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff Adam Sturdevant seeks compensation for loss of liberty, emotional distress, reputational harm, and decades of impaired access to veterans' benefits caused by the negligent, wrongful, and otherwise actionable acts and omissions of employees and agents of the United States Navy and the Defense Finance and Accounting Service (DFAS), acting within the course and scope of their federal employment. Plaintiff does not seek recovery for excluded intentional torts under 28 U.S.C. § 2680(h), but instead seeks damages arising from antecedent administrative negligence and ministerial failures that proximately caused his injuries.

2. Plaintiff contends that federal employees failed to meet mandatory, ministerial, and nondiscretionary duties governing military discharge processing, personnel records management, and pay-status reconciliation. Those failures resulted in contradictory governmental determinations concerning Plaintiff's military status, creating the jurisdictional uncertainty that ultimately culminated in Plaintiff's wrongful confinement in February 1992. The negligence complained of herein constitutes administrative negligence arising from ministerial recordkeeping and discharge processing failures; no claim arises from a discretionary or combat function shielded from suit under 28 U.S.C. § 2680.

1

3. Plaintiff does not challenge the Government's discretionary handling of the underlying military legal proceeding. That proceeding was resolved through a negotiated disposition providing for Plaintiff's administrative separation and discharge in lieu of courts-martial. In exchange for that negotiated disposition, Plaintiff knowingly relinquished substantial legal rights, accepted administrative separation and discharge, and fully performed his obligations thereunder. The negligence alleged in this action arose only thereafter, during the mandatory ministerial execution, documentation, reconciliation, and completion of the agreed administrative separation and discharge.

4. Plaintiff has fully exhausted all required administrative remedies prior to initiating this action, as set forth more fully below. All conditions precedent to this lawsuit have been satisfied. This Court has subject-matter jurisdiction and venue is proper in this District.

5. As a direct, foreseeable, and proximate result of the government's negligence, Plaintiff has suffered and continues to suffer wrongful confinement, emotional distress, reputational harm, and significantly impaired access to veterans' benefits, for which Plaintiff seeks full compensatory relief as authorized by law.

## SECTION 2 — LEGAL FRAMEWORK

6. The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, constitutes the exclusive remedy for tort claims arising from the negligent or wrongful acts or omissions of federal employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). No separate action against an individual federal employee is available or appropriate; the United States of America is the sole proper defendant in this action.

7. The United States has waived its sovereign immunity with respect to claims cognizable under the FTCA. Pursuant to 28 U.S.C. § 1346(b)(1), the United States is subject to civil liability for personal injury or other harm caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his or her office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

8. The United States is liable under the FTCA in the same manner and to the same extent as a private individual would be liable under the same or like circumstances. 28 U.S.C. § 2674. The

2

government enjoys no immunity from ordinary tort liability merely by virtue of its governmental character, except as expressly provided by statute.

9. As a prerequisite to suit under the FTCA, a plaintiff must first file an administrative claim with the appropriate federal agency and either (a) receive a final written denial, or (b) allow six months to elapse without final agency action. 28 U.S.C. § 2675(a). This presentment requirement is jurisdictional and must be satisfied prior to initiating litigation. *McNeil v. United States*, 508 U.S. 106 (1993). Plaintiff's administrative claim was initially denied on April 29, 2025, and following reconsideration proceedings the agency issued its final written denial on January 27, 2026.

10. The substantive law of the state in which the alleged negligence occurred, or in which Plaintiff resides and suffered its effects, governs the merits of an FTCA claim. *Richards v. United States*, 369 U.S. 1 (1962). Accordingly, the law of the State of Wisconsin governs the substantive negligence standards applicable to this action. Because the FTCA incorporates the substantive tort law that would govern a comparable private-party negligence action under like circumstances, Wisconsin negligence principles—including the elements of duty, breach, causation, foreseeability, and damages—govern the substantive negligence standards applicable to Plaintiff's claims.

11. FTCA claims are subject to a two-year statute of limitations running from the date the claim accrues. 28 U.S.C. § 2401(b). Under the discovery rule, a claim accrues when the claimant knows, or in the exercise of reasonable diligence should have known, both the existence of the injury and its causal connection to the acts or omissions of a government employee. *United States v. Kubrick*, 444 U.S. 111 (1979). The limitations period may be tolled under the doctrine of equitable tolling where the plaintiff has diligently pursued his rights but was prevented from timely filing due to extraordinary circumstances beyond his control. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). This action is timely filed as alleged herein.

### SECTION 3 — JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), which vests district courts with exclusive original jurisdiction over civil actions

against the United States for money damages arising from the negligent or wrongful acts or omissions of government employees acting within the scope of their employment.

13. Plaintiff satisfied the administrative exhaustion requirement of 28 U.S.C. § 2675(a) by presenting a written administrative claim to the appropriate federal agency. The agency issued a final written denial of Plaintiff's claim on January 27, 2026. Plaintiff alleges that this action is timely under 28 U.S.C. § 2401(b), including under the principles of delayed discovery and equitable tolling set forth elsewhere in this Complaint.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1402(b). Plaintiff resides in Green Bay, Wisconsin, which is within the Eastern District of Wisconsin, Green Bay Division. Substantial portions of the acts and omissions giving rise to this claim produced injury to Plaintiff within this District.

## SECTION 4 — PARTIES

15. Plaintiff is an adult resident of Green Bay, Wisconsin, with a mailing address of 1049 Dousman Street, Green Bay, Wisconsin 54303. Plaintiff is a veteran of the United States Navy who was processed for administrative discharge in 1991. At all times relevant to this action, Plaintiff's rights and claims arise from his status as a service member whose discharge was negligently processed, and subsequently as a veteran residing in the Eastern District of Wisconsin.

16. Defendant United States of America is named as the sole proper defendant in this action pursuant to the FTCA, 28 U.S.C. § 2679(a). At all relevant times, the federal employees and agents responsible for the acts and omissions alleged herein were employed by and acting as agents of the United States Navy and the Defense Finance and Accounting Service (DFAS), departments and agencies of the United States government, and were at all relevant times acting within the course and scope of their federal employment.

17. At all relevant times, the individual federal employees and officers whose negligent acts and omissions caused or contributed to Plaintiff's injuries — including Navy personnel responsible for processing Plaintiff's administrative discharge and maintaining his service records, DFAS personnel responsible for Plaintiff's pay records and duty-status determinations, and administrative personnel at Naval Station Philadelphia — were duly employed by the United

4

States of America and were at all material times acting within the course and scope of their employment. The identities of those individuals will be established through discovery. Pursuant to 28 U.S.C. § 2679(b)(1), this action against the United States is the exclusive remedy for the injuries caused by those individuals.

## SECTION 5 — SUMMARY OF ADMINISTRATIVE NEGLIGENCE

18. The United States Navy and DFAS failed to maintain adequate policies and procedures, and failed to follow existing mandatory policies and procedures, governing the proper execution, documentation, and finalization of administrative discharge proceedings for Plaintiff. These duties are ministerial in nature, prescribed by regulation, and not subject to discretionary policy judgment.

19. Navy personnel failed to follow existing mandatory agency protocols and applicable regulations in the execution of Plaintiff's discharge processing, the maintenance of his personnel records, and the communication of his administrative status. This failure was not an isolated error but resulted in the irreconcilable contradiction between Plaintiff's pay records and his ambiguous active-duty status.

20. The United States Navy failed to adequately maintain, organize, and preserve Plaintiff's service record. Plaintiff's service record was erroneously located in NAVSTA Philadelphia administrative files — not in the overseas separation files where Plaintiff alleges it should have been maintained pursuant to applicable regulations and established administrative procedures— demonstrating affirmative administrative mismanagement of Plaintiff's personnel records.

21. DFAS and the United States Navy failed to timely identify and reconcile the known and documented inconsistencies in Plaintiff's pay records and duty-status classification. An interruption in Plaintiff's DFAS pay entitlement — a ministerial determination tied directly to duty status — constituted documentary evidence of a break in recognized active-duty status that was never reconciled before Plaintiff was apprehended and confined.

22. Federal employees directly mishandled Plaintiff's discharge processing and service record in a manner that deviated materially from applicable mandatory regulations and procedures, and this direct mishandling was a proximate cause of Plaintiff's wrongful confinement and the injuries and damages Plaintiff suffered and continues to suffer.

23. The Government's negligence was complete only after Plaintiff's negotiated administrative separation (ADSEP) was approved. This legal phase ended when Plaintiff waived legal rights and accepted an administrative separation in lieu of a courts-martial. The administrative phase began when Navy personnel were required to execute mandatory ministerial duties — including verifying Administrative Leave, maintaining Plaintiff's service record, reconciling DFAS pay status, executing BUPERS discharge authority, and reporting the discharge date.

24. The Government failed to perform these mandatory administrative duties. These failures produced contradictory governmental determinations concerning Plaintiff's military status — including Administrative Leave status, ADSEP leave authorization, DFAS pay interruption, duty assignment of "SEPARATION," declination to prosecute alleged UA, and reaffirmation of BUPERS discharge authority. These contradictions were not the product of military judgment; they were the product of administrative negligence.

## SECTION 6 — DISCRETIONARY-FUNCTION EXCEPTION DOES NOT APPLY

25. The FTCA's discretionary-function exception, 28 U.S.C. § 2680(a), does not bar this action. That exception preserves sovereign immunity only for acts or omissions involving the exercise of a discretionary function or duty grounded in considerations of social, economic, or political policy. The exception is narrowly construed and applies only where (a) the challenged conduct involves an element of judgment or choice, and (b) that judgment is of the kind that the exception was designed to shield. *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991).

26. The conduct at issue in this action did not involve the exercise of policy-level judgment. The employees and agents of the US Navy and DFAS whose acts and omissions caused Plaintiff's injuries were engaged in the execution of mandatory administrative procedures governing discharge processing, personnel records maintenance, and pay-status determination — not the formulation of military or agency policy. Their failures were ministerial and operational in nature, not discretionary policy choices entitled to exemption from liability.

27. Where a federal statute, regulation, or mandatory agency policy specifically prescribes a required course of action for federal employees, there is no room for the exercise of discretion,

6

and a failure to follow that prescribed course of action is not protected conduct under the discretionary-function exception. *Berkovitz*, 486 U.S. at 536. An employee who violates a mandatory directive is not exercising judgment — he or she is simply failing to comply with the law.

28. Applicable Navy regulations and directives—including the Military Personnel Manual (MILPERSMAN) 3630600 governing misconduct separation processing; the MILPERSMAN 1070-series governing the creation, maintenance, verification, and disposition of Field Service Records; Office of the Chief of Naval Operations Instruction (OPNAVINST) 5350.4B governing alcohol-related separation procedures; and applicable Secretary of the Navy Instruction (SECNAVINST) and DFAS administrative directives—imposed mandatory, ministerial duties concerning the processing of administrative separations, the maintenance and verification of service records, and the reconciliation of duty-status information. These directives employed mandatory language such as "shall," "will," and "must," leaving no room for discretionary policy judgment in the execution of routine administrative functions. Plaintiff alleges that responsible personnel failed to perform these ministerial obligations. The United States and its employees are bound to comply with these mandatory directives. Plaintiff alleges that the negligent failure to perform those required ministerial duties gave rise to the contradictory governmental determinations concerning Plaintiff's military status alleged throughout this Complaint. The precise application of these authorities to Plaintiff's separation and status determinations will be further established through discovery and documentary evidence.

29. The mandatory administrative procedures governing discharge processing, personnel records, and duty-status reconciliation existed to ensure that military personnel status was accurately determined before rights, obligations, pay, or military jurisdiction were affected. Plaintiff alleges that the wrongful confinement he suffered was the precise type of foreseeable harm those mandatory ministerial procedures were intended to prevent.

30. Even assuming arguendo that some element of judgment were involved in the acts or omissions at issue, the conduct was not the kind of policy-oriented, high-level governmental decision-making that the discretionary-function exception was designed to protect. The exception does not shield the day-to-day operational and administrative decisions of individual personnel clerks, records custodians, or pay administrators from ordinary tort liability. *Gaubert*,

7

499 U.S. at 322–23. The government's acts and omissions here were operational and ministerial in nature, not legislative or regulatory.

## SECTION 7 — MILITARY / FERES EXCEPTION DOES NOT APPLY

31. The judicially created doctrine announced in *Feres v. United States*, 340 U.S. 135 (1950), bars certain Federal Tort Claims Act actions for injuries sustained by active-duty service members where the injuries arise out of activity "incident to military service." Plaintiff alleges that this action falls outside the scope of that doctrine.

32. The Feres doctrine does not apply because the negligence alleged in this action occurred only after the legal phase of Plaintiff's case had concluded. Plaintiff does not challenge any military command decision, disciplinary judgment, or courts-martial-related action. Those matters were resolved through a negotiated agreement that Plaintiff accepted, relinquished legal rights for, fully performed, and that a Navy Legal Officer approved.

33. Once ADSEP was negotiated and approved, Plaintiff's relationship with the Navy was governed exclusively thereafter by administrative procedures conducted in his physical absence, not military command discretion. Plaintiff was placed into official Administrative Leave status; received a verifiable Leave Control Number; was explicitly advised that separation processing would continue even in the event of alleged unauthorized absence; and became subject to an official Bureau of Naval Personnel (BUPERS) message granting discharge authority. That message did not merely grant discharge authority; it ordered responsible personnel to execute specified administrative actions, including advising BUPERS (PERS-8322) by message of the date Plaintiff was discharged, thereby confirming that additional mandatory ministerial steps remained before the discharge process was complete. These were mandatory ministerial duties performed pursuant to official BUPERS orders, not discretionary recommendations. These administrative statuses and directives are not "incident to military service" within the meaning of Feres; they are ministerial procedures required to execute a completed legal disposition.

34. The injuries alleged herein arose from negligent administrative implementation, not from military command decisions. The Government's own records — including DFAS pay interruption, duty assignment "SEPARATION," declination to prosecute alleged UA, and JAG reaffirmation of BUPERS discharge authority — demonstrate that Plaintiff was no longer in an ordinary active-duty relationship when the negligence occurred. Feres presupposes a clear and uninterrupted military status; the Government's contradictory records defeat that presupposition.

8

35. Plaintiff further alleges that the documented interruption in DFAS pay entitlement, together with the government's inconsistent personnel records, demonstrates that the United States itself failed to consistently recognize Plaintiff as serving in uninterrupted active-duty status during the relevant period. Those unreconciled inconsistencies required mandatory administrative resolution before any exercise of military jurisdiction over Plaintiff.

36. The injuries alleged herein arose from negligent administrative implementation—not from military command decisions or activities incident to military service. Plaintiff's claims therefore challenge ordinary governmental negligence in the execution of ministerial duties rather than protected military decision-making.

37. Because Plaintiff alleges that his injuries resulted from the government's negligent creation and maintenance of contradictory administrative records concerning his military status, rather than from activities incident to military service, the Feres doctrine does not bar this action.

## SECTION 8 — DELAYED DISCOVERY AND EQUITABLE TOLLING

38. The FTCA's statute of limitations, 28 U.S.C. § 2401(b), provides that a tort claim against the United States shall be forever barred unless the administrative claim is presented within two years after the claim "accrues," and the action is commenced within six months of final agency denial. Under the discovery rule, a claim accrues "when the plaintiff has discovered both the existence of his injury and its cause." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Mere knowledge of the injury, without knowledge of its governmental cause, is insufficient to start the limitations clock.

39. Plaintiff did not discover, and in the exercise of reasonable diligence could not reasonably have discovered, the factual basis of the negligence alleged herein until additional categories of government records became available over time. Plaintiff repeatedly sought administrative relief concerning his military status and discharge through available Navy channels but was repeatedly unsuccessful and reasonably believed, based upon official representations and the repeated denial of administrative relief, that no further Navy remedy existed. Plaintiff thereafter focused his efforts upon Department of Veterans Affairs proceedings, which remained available to address his military status and eligibility for veterans' benefits.

40. During those proceedings, Plaintiff gradually obtained additional government records that materially altered his understanding of his military status. Plaintiff later learned that Defense

9

Finance and Accounting Service (DFAS) pay records could be requested and obtained—information previously unknown to him. Only after obtaining and comparing those pay records with his personnel records, discharge-processing documents, Administrative Leave documentation, and related governmental records did Plaintiff discover the previously undiscovered administrative inconsistencies that form the factual basis of the negligence alleged herein.

41. Equitable tolling further preserves Plaintiff's claims. The United States Supreme Court has held that the FTCA's statute of limitations is subject to equitable tolling in appropriate circumstances. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). Plaintiff diligently pursued the avenues of relief that reasonably appeared available based upon the information then known to him. The factual basis of this action became apparent only through obtaining and comparing multiple categories of government records that were not previously available to Plaintiff in a form permitting discovery of the negligent ministerial failures alleged herein. Plaintiff therefore filed his administrative claim promptly after discovering the factual basis of those claims.

42. Plaintiff filed his administrative tort claim within two years of the date on which he discovered, or in the exercise of reasonable diligence should have discovered, both the existence of his injury and its causal connection to the negligent acts and omissions of government employees. Accordingly, Plaintiff's administrative claim and this action are timely in all respects.

## SECTION 9 — STATEMENT OF FACTS

### A. Background on Plaintiff and His Naval Service

43. Plaintiff Adam Sturdevant is an adult resident of Green Bay, Wisconsin. He enlisted in the United States Navy and served on active duty until administrative separation proceedings were initiated against him in 1991.

44. Plaintiff served during his period of recognized active-duty service. Prior to the acts and omissions complained of herein, Plaintiff was engaged in active military service and subject to the full range of rights and obligations attendant to that status, including entitlement to pay, housing, and the protections of applicable military regulations and law.

10

**B. The Federal Agency, Facility, and Relevant Duties**

45. The United States Navy, through its personnel and administrative authorities — including but not limited to personnel at Naval Station Philadelphia (NAVSTA Philadelphia) — bore mandatory, ministerial, and nondiscretionary duties to properly execute, document, and finalize Plaintiff's administrative discharge once separation proceedings were initiated. Those duties are prescribed by applicable provisions of MILPERSMAN, including MILPERSMAN 3630600 and the MILPERSMAN 1070-series governing personnel records administration, together with applicable OPNAVINST and SECNAVINST directives.

46. DFAS bore mandatory, ministerial, and nondiscretionary duties to accurately maintain Plaintiff's pay records and to reconcile Plaintiff's pay status with his recognized duty status. Pay entitlement is a ministerial determination tied directly to duty status and governed by applicable DFAS regulations and DoD directives.

47. Once discharge processing is initiated, Navy personnel regulations—including MILPERSMAN 3630600, OPNAVINST 5350.4B, and the MILPERSMAN 1070-series governing service-record administration—impose specific, mandatory obligations to properly execute each step of the separation process, maintain the service member's records in appropriate custody, complete required documentation, verify Field Service Records upon transfer or disposition, and ensure that administrative status is accurately reflected across all relevant governmental systems. These duties are ministerial and operational and do not involve command discretion or policy judgment.

**C. Initiation of Discharge Processing and Administrative Failures**

48. In June 1991, Plaintiff was processed for administrative discharge from the United States Navy. Administrative separation constituted a prescribed personnel process requiring the sequential execution of mandatory ministerial acts before discharge processing could be accurately completed and documented. Under applicable Navy regulations, responsible personnel were required to properly execute, document, reconcile, and finalize each step of that administrative process.

49. Plaintiff further alleges that the Chief of Naval Personnel (BUPERS), by official message dated June 17, 1991, approved Plaintiff's administrative discharge under applicable separation

11

authority and directed responsible personnel to execute the discharge and report the discharge date in accordance with Navy procedures.

50. Plaintiff further alleges that his NAVPERS 1070/605 (History of Assignments) reflected administrative entries documenting his transfer to Transient Personnel Unit (TPU) Philadelphia with duties identified as "SEPARATION," followed by a later handwritten discharge entry. Plaintiff alleges that these personnel-record entries, considered together with the BUPERS discharge directive, Administrative Leave status, and DFAS pay records, demonstrate contradictory governmental determinations concerning Plaintiff's military status that required accurate ministerial reconciliation but were never properly resolved.

51. Navy personnel failed to properly complete Plaintiff's discharge processing. Plaintiff alleges that the discharge process was not completed in accordance with applicable procedures, resulting in contradictory governmental determinations concerning his military status across multiple governmental systems. Plaintiff possessed a military identification card marked "Administrative Leave," consistent with that reasonable understanding.

52. Plaintiff further alleges that Navy personnel approved and documented authorized leave in connection with his separation processing, assigning an official leave control number pursuant to established Navy administrative procedures. Plaintiff alleges that the existence of this formally authorized leave further required accurate ministerial administration and reconciliation of Plaintiff's military status before any subsequent exercise of military jurisdiction.

53. Plaintiff further alleges that, before the events giving rise to this action, Plaintiff was subject to courts-martial and a punitive discharge. Instead, the matter was resolved through a negotiated disposition administered by the Naval Support Activity Detachment La Maddalena Legal Office. Plaintiff knowingly executed written waivers of substantial legal rights and accepted administrative separation in lieu of courts-martial. Plaintiff fully performed every obligation under that negotiated disposition. Plaintiff alleges that, once accepted by both parties, the United States became obligated to faithfully perform the mandatory ministerial duties required to execute and complete the agreed administrative separation.

54. Plaintiff's negotiated disposition functioned as the military-justice equivalent of a courts-martial plea agreement. Plaintiff knowingly waived substantial procedural rights, accepted administrative separation in lieu of courts-martial, and fully performed every obligation required

of him under that negotiated disposition. The Navy received the benefit of that bargain: no courts-martial, no administrative board, no contested litigation, and finality through administrative discharge. Once the Navy accepted Plaintiff's rights-waiver documents and approved ADSEP, the legal phase of Plaintiff's case was complete. No further military-justice decisions remained to be made.

55. What followed was a distinct administrative phase governed entirely by mandatory ministerial duties. After ADSEP was negotiated and approved, Navy personnel were required to perform nondiscretionary administrative tasks prescribed by MILPERSMAN, OPNAVINST, SECNAVINST, and DFAS directives — including issuing and verifying Administrative Leave status, maintaining Plaintiff's service record, reconciling DFAS pay status, executing the BUPERS discharge authority, reporting the discharge date, and continuing separation processing even in the event of alleged unauthorized absence. These duties were operational and ministerial, not discretionary or policy-based.

56. The negligence alleged in this action occurred solely within this administrative phase. Plaintiff does not challenge any military judgment relating to the negotiated disposition itself. Rather, Plaintiff challenges the Government's negligent performance of mandatory administrative duties required to execute the already-agreed ADSEP — duties that existed only after the legal phase had ended.

57. Plaintiff further alleges that, by official Navy message dated June 3, 1991, he was directed to transfer to Transient Personnel Unit (TPU) Philadelphia to commence Administrative Leave while awaiting final disposition of the recommended administrative separation. Plaintiff alleges that this official directive implemented the negotiated administrative disposition described above and marked the commencement of the administrative phase of Plaintiff's separation. The directive required responsible Navy personnel to faithfully execute the mandatory ministerial duties necessary to complete Plaintiff's agreed administrative separation and discharge.

58. Administrative Leave was itself an official military administrative status created to implement Plaintiff's agreed administrative separation and discharge. It was neither synonymous with discharge nor equivalent to ordinary active-duty service. Plaintiff alleges that the Government's own recognition of this intermediate administrative status further demonstrates

13

that Plaintiff's military status required accurate ministerial administration and reconciliation before military jurisdiction could properly be exercised.

59. Plaintiff further alleges that the contemporaneous written administrative record expressly advised: "You are advised that, should you begin a period of unauthorized absence following delivery of this Notice, the separation processing in your case will proceed in your absence." This written instruction appears in the Navy's own official administrative records and demonstrates that the Navy expressly contemplated that administrative separation processing would continue notwithstanding any subsequent period of unauthorized absence. Plaintiff alleges that this written directive reaffirmed his documented understanding that the agreed administrative separation and discharge would proceed to completion and further underscores the mandatory ministerial obligation of responsible personnel to faithfully execute, document, reconcile, and complete that process.

60. Plaintiff was instructed to surrender his service record at NAVSTA Philadelphia, which he did as directed. Following that instruction and the initiation of formal discharge processing, Plaintiff reasonably believed the negotiated administrative separation and discharge would be completed in accordance with the Navy's written directives.

61. Plaintiff further alleges that, before his February 1992 confinement, the United States had already generated multiple official administrative records concerning his military status, including discharge-processing documents, Administrative Leave directives, personnel assignment records, leave documentation, and DFAS pay records. Plaintiff alleges that these governmental records required reconciliation through mandatory ministerial action before military jurisdiction was exercised against him, but that such reconciliation never occurred.

**D. DFAS Pay Records Reflecting Interruption in Duty Status**

62. DFAS pay records reflect an interruption in Plaintiff's pay entitlement consistent with a break or uncertainty in his recognized active-duty status. Pay entitlement is a ministerial determination tied directly to duty status; a DFAS-documented interruption in pay constitutes evidence that the government recognized uncertainty or discontinuity in Plaintiff's active-duty status requiring administrative reconciliation.

63. The Government cannot simultaneously recognize a discontinuity in Plaintiff's military status for administrative and pay purposes while asserting uninterrupted military status solely for

14

purposes of exercising military jurisdiction. Having created and maintained materially contradictory governmental determinations concerning Plaintiff's status, the United States cannot invoke those same contradictions as a jurisdictional shield against liability.

**E. Wrongful Confinement in February 1992**

64. Despite the documented discontinuity in Plaintiff's pay and administrative status — and despite Plaintiff's documented and reasonable belief that the negotiated administrative separation and discharge would be completed in accordance with the Navy's written directives — Plaintiff was apprehended and confined in February 1992 under the government's assertion that he remained on active duty and subject to military jurisdiction.

65. Plaintiff alleges that the government's physical exercise of custody over him did not itself resolve or cure the contradictory governmental determinations concerning his military status that had resulted from the negligent execution of mandatory administrative duties. Plaintiff alleges that physical custody cannot substitute for the accurate ministerial completion and reconciliation of the administrative status determinations required by applicable Navy regulations.

66. At the time of confinement, Plaintiff possessed a military identification card marked "ADMINISTRATIVE LEAVE" typed in bold and highlighted and had previously surrendered his service record at NAVSTA Philadelphia as instructed. Plaintiff had no reason to believe he remained subject to military authority and no means of independently verifying the inconsistencies in the government's own administrative records.

67. During confinement, Plaintiff informed military personnel and defense counsel that he had surrendered his service record to NAVSTA Philadelphia. Defense counsel located Plaintiff's service record among NAVSTA Philadelphia administrative files — not among overseas separation files, where Plaintiff alleges it should have been maintained pursuant to applicable regulations and established administrative procedures. The misplacement of Plaintiff's service record in an incorrect file system is direct evidence of administrative mismanagement of Plaintiff's personnel records by Navy personnel. The location and recovery of Plaintiff's service record from NAVSTA Philadelphia administrative files further demonstrate the government's failure to comply with established procedures governing the transfer, maintenance, verification, and disposition of enlisted personnel records.

68. Plaintiff further alleges that applicable Navy regulations required responsible personnel to verify the location, contents, custody, and disposition of his Field Service Record during the administrative separation process. Plaintiff alleges that faithful performance of those mandatory ministerial verification duties would have identified and corrected the contradictory governmental determinations concerning Plaintiff's military status before military jurisdiction was exercised against him.

69. Plaintiff was released within minutes after defense counsel located and recovered Plaintiff's service record from NAVSTA Philadelphia administrative files. Plaintiff alleges that the temporal proximity between the recovery of the misplaced personnel record and his immediate release permits the reasonable inference that the administrative records maintained by the United States were material to the continuation of his confinement. Plaintiff further alleges that this sequence of events demonstrates the central role of the government's administrative recordkeeping failures in producing and prolonging the wrongful confinement alleged herein.

**F. Additional Evidence of Administrative Negligence and Recordkeeping Failures**

70. Plaintiff's February 1992 apprehension and confinement necessarily generated routine administrative records in the ordinary course of military operations, including brig intake documentation, confinement records, release documentation, Judge Advocate General (JAG) correspondence, custody records, and related administrative materials. Such records, if maintained in accordance with applicable regulations and ordinary administrative practice, would ordinarily be expected to document the basis for Plaintiff's confinement, the status under which he was held, the administrative review of his case, and the circumstances leading to his release.

71. Plaintiff has diligently sought these records through appropriate administrative channels but has been unable to obtain a complete set of Brig and JAG records relating to his confinement. Plaintiff alleges that the existence, contents, location, preservation, or absence of those records are matters appropriately explored through discovery. To the extent such records were required to be created, maintained, or preserved, their absence, incompleteness, or inconsistency may constitute additional evidence of the administrative recordkeeping failures alleged throughout this Complaint.

16

72. Plaintiff does not assert an independent claim based upon the existence or absence of Brig or JAG records. Rather, Plaintiff alleges that any deficiencies in those records would be consistent with the same pattern of negligent administrative execution, record maintenance, and status reconciliation alleged throughout this action. The Brig and JAG records therefore constitute potentially significant evidence bearing upon the government's negligent administration of Plaintiff's military status and the circumstances surrounding his wrongful confinement.

73. DFAS records later reflect reinstatement of Plaintiff's pay, implicitly acknowledging that prior pay entitlement — and therefore recognized duty status — had been interrupted. This subsequent reinstatement confirms the existence of the pay interruption and its connection to Plaintiff's administrative status during the discharge processing period.

74. Under applicable law, military jurisdiction depends on valid and continuous active-duty status. Negligent misclassification or failure to reconcile conflicting duty-status determinations is a ministerial failure, not a discretionary military judgment. Plaintiff alleges that these ministerial failures created contradictory governmental determinations concerning his military status that were never reconciled before military jurisdiction was exercised against him.

**G. Delayed Discovery Through VA Proceedings**

75. Plaintiff did not and could not reasonably have discovered the factual basis of these claims until additional categories of government records became available over time. After repeated unsuccessful efforts to obtain administrative relief concerning his military status and discharge, Plaintiff reasonably believed no further Navy remedy existed and instead pursued VA proceedings concerning his military status and eligibility for veterans' benefits. During those proceedings, Plaintiff gradually obtained additional military personnel records that materially altered his understanding of his administrative status.

76. Plaintiff later learned that Defense Finance and Accounting Service (DFAS) pay records could be requested and obtained, information previously unknown to him. Only after obtaining and comparing those pay records with his personnel records, discharge-processing documents, Administrative Leave documentation, and related governmental records did Plaintiff discover the previously unknown administrative inconsistencies that form the factual basis of the negligence alleged herein. Plaintiff thereafter promptly pursued his administrative remedies under the Federal Tort Claims Act. H. Administrative Claim and Agency Denial

17

77. Plaintiff presented a written administrative tort claim to the appropriate federal agency in accordance with 28 U.S.C. § 2675(a) and 28 C.F.R. Part 14, asserting a total claim value of $5,000,000. The administrative claim set forth the factual basis of Plaintiff's claims as alleged herein.

78. The agency initially denied Plaintiff's administrative claim on April 29, 2025. Following reconsideration proceedings, the agency issued its final written denial on January 27, 2026. Plaintiff respectfully submits that both determinations were erroneous and that the allegations herein establish the government's liability under the FTCA.

**I. Ongoing Harm and Continuing Impact**

79. The injuries caused by the government's negligence are not solely historical in nature — they continue to affect Plaintiff. Plaintiff suffered wrongful loss of liberty, emotional distress, reputational harm, and significant long-term impairment of his access to veterans' benefits and other rights to which he is entitled as a result of the government's administrative failures. The full scope of these ongoing damages will be established through evidence at trial.

## SECTION 10 — CLAIMS FOR RELIEF

### COUNT I — NEGLIGENCE (FTCA)

80. Each claim asserted herein arises exclusively from the Government's negligent performance of mandatory administrative duties required to execute Plaintiff's already-negotiated administrative separation (ADSEP). As set forth in Section 9, Plaintiff's military-justice matter was resolved through a negotiated disposition functioning as the courts-martial equivalent of a plea agreement: Plaintiff knowingly waived substantial rights, accepted ADSEP in lieu of courts-martial, and fully performed every obligation required of him. Once the Navy accepted that disposition, the legal phase of Plaintiff's case was complete.

81. The negligence alleged in this action occurred only thereafter, during the administrative phase. Navy and DFAS personnel were required to perform nondiscretionary ministerial duties

18

— including issuing and verifying Administrative Leave status, maintaining and reconciling personnel and pay records, executing BUPERS discharge authority, reporting the discharge date, and continuing separation processing even in the event of alleged unauthorized absence. These duties were mandatory, operational, and governed by regulation; they did not involve military judgment or command discretion.

82. The Government's own documentary record demonstrates that these administrative duties were not performed. As detailed in Section 9(A)–(C), the Navy's records reflect Administrative Leave status, a verifiable Leave Control Number, a UA-does-not-stop-processing clause, BUPERS discharge authority, DFAS pay interruption, duty assignment "SEPARATION," declination to prosecute alleged UA, and reaffirmation of discharge authority months later. These contradictions were created by administrative mismanagement — not by military command decisions.

83. Accordingly, each cause of action arises from administrative negligence, not from any activity incident to military service. The claims asserted herein fall squarely within the FTCA's waiver of sovereign immunity and outside both the discretionary-function exception and the Feres doctrine.

84. As a direct and proximate result of these breaches, Plaintiff was wrongfully confined in February 1992 and suffered loss of liberty, emotional distress, reputational harm, and decades of impaired access to veterans' benefits. The government's negligence was the direct, foreseeable, and proximate cause of Plaintiff's injuries because it created the contradictory governmental determinations concerning Plaintiff's military status upon which the wrongful confinement depended.

## COUNT II — WRONGFUL CONFINEMENT RESULTING FROM ADMINISTRATIVE NEGLIGENCE

85. Plaintiff's confinement in February 1992 resulted directly from negligent administrative failures in the processing and recording of Plaintiff's discharge — not from any discretionary military judgment. At the time of confinement, Plaintiff's recognized active-duty status had been disrupted by the government's own administrative negligence, including the DFAS-documented pay interruption reflecting a break in recognized duty status.

19

86. The government's exercise of military jurisdiction over Plaintiff was predicated upon administrative status determinations that Plaintiff alleges were internally contradictory, unreconciled, and themselves the product of negligent ministerial failures. Had those mandatory administrative duties been properly performed, the factual predicate for Plaintiff's confinement would never have existed.

87. As a direct and proximate result of this wrongful confinement — itself caused by the government's administrative negligence — Plaintiff suffered: (a) loss of liberty; (b) emotional distress and psychological harm; (c) reputational harm arising from the circumstances of his confinement; and (d) decades of impaired access to veterans' benefits, rights, and services to which Plaintiff would otherwise have been entitled. Plaintiff is entitled to full compensatory damages for each element of harm.

## COUNT III — NEGLIGENT ADMINISTRATIVE FAILURE / NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

88. The United States had mandatory, nondiscretionary duties to ensure that its military personnel, pay, and records systems functioned coherently and that contradictory status determinations were identified and reconciled before those contradictions produced harm to service members. This duty exists by virtue of applicable federal regulations, agency directives, and the established principle that ministerial record-keeping obligations must be faithfully performed.

89. The government breached these duties by allowing the contradictory duty-status determinations in Plaintiff's personnel and DFAS records to persist without reconciliation, creating a foreseeable and unreasonable risk that Plaintiff would be subjected to adverse action — including confinement — on the basis of inaccurate status records. The harm that resulted — Plaintiff's wrongful confinement — was the exact type of harm that faithful performance of the government's ministerial record-keeping duties was designed to prevent.

90. As a direct and proximate result of the government's negligent administrative failures, Plaintiff suffered serious and lasting emotional distress — including the trauma of wrongful confinement resulting from contradictory governmental determinations concerning his military status, the prolonged uncertainty regarding that status, and the long-term reputational and

20

practical consequences of the government's ministerial failures— that a person of ordinary sensibilities in Plaintiff's position would find severe. This emotional harm was foreseeable and the direct product of the government's negligence.

91. As a direct and proximate result of the government's negligent infliction of emotional distress upon Plaintiff, Plaintiff has suffered and continues to suffer significant non-economic damages, including emotional anguish, loss of enjoyment of life, humiliation, and loss of the ability to fully access the veterans' benefits and services that form an important component of Plaintiff's quality of life and financial stability. Plaintiff is entitled to the full measure of compensatory damages for these injuries as authorized by the FTCA and applicable Wisconsin law.

## SECTION 11 — DAMAGES

92. As a direct and proximate result of the acts and omissions of the United States and its employees as alleged herein, Plaintiff suffered wrongful confinement in February 1992 — a deprivation of liberty without lawful basis — and has suffered the lasting consequences of that confinement, including emotional distress, reputational harm, and impaired access to veterans' benefits. The full scope of Plaintiff's damages will be proven at trial through competent evidence.

93. Plaintiff suffered, and continues to suffer, significant non-economic damages, including: (a) the loss of liberty occasioned by his wrongful confinement; (b) emotional distress and mental anguish arising from the confinement and its prolonged aftermath; (c) reputational harm resulting from the circumstances and characterization of Plaintiff's confinement; and (d) loss of enjoyment of life and impaired ability to pursue the full range of opportunities available to a veteran who has not been subjected to the government's negligent administrative failures.

94. Plaintiff has suffered decades of impaired access to veterans' benefits, programs, and services to which he would have been fully entitled but for the government's negligent recordkeeping and discharge processing failures. The financial, practical, and personal consequences of this impaired access constitute a discrete and significant category of compensable harm, the full extent of which will be established through evidence at trial.

95. Plaintiff has incurred out-of-pocket costs and special damages as a direct result of the government's negligence, including costs associated with obtaining his military and DFAS

21

records, pursuing VA proceedings to discover the government's administrative failures, and addressing the ongoing consequences of those failures. The precise amounts of these special damages will be proven at trial.

96. Plaintiff seeks total compensatory damages in the amount of $5,000,000, consistent with the amount asserted in his administrative FTCA claim presented to the agency. This amount represents Plaintiff's reasonable estimation of the full compensatory value of his wrongful confinement, emotional distress, reputational harm, and decades of impaired veterans' benefits access, and will be proven at trial through competent evidence.

## SECTION 12 — PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Adam Sturdevant respectfully prays that this Court enter judgment in Plaintiff's favor and against Defendant United States of America, and award the following relief:

(a) A judgment on the merits in favor of Plaintiff and against Defendant United States of America on each and every Count set forth in Section 10 of this Complaint;

(b) An award of compensatory damages to Plaintiff in the amount of $5,000,000, including all damages for wrongful confinement, loss of liberty, emotional distress, reputational harm, impaired access to veterans' benefits, out-of-pocket costs, and all other actual damages proven at trial;

(c) An award of all allowable costs of suit incurred in prosecuting this action, to the extent permitted by applicable law;

(d) An award of pre-judgment and post-judgment interest on all amounts awarded, to the extent authorized by law;

(e) Such other and further relief as may be authorized under the Federal Tort Claims Act and applicable law.

22

## SECTION 13 — SIGNATURE BLOCK

Respectfully submitted,

7/23/26

**Adam Sturdevant**, Pro Se Plaintiff
1049 Dousman Street
Green Bay, Wisconsin 54303
Telephone: (920) 888-6868
Email: adam.sturdevant.psyd@gmail.com
Date:

Case 1:26-cv-01294-BBC     Filed 07/23/26     Page 23 of 23     Document 1