# *Hootsell v. Dep't of Veteran Affairs*

United States District Court for the Eastern District of Wisconsin

March 17, 2014, Decided; March 17, 2014, Filed

Case No. 13-C-1221

**Reporter**
2014 U.S. Dist. LEXIS 196378 *

JEARLEAN HOOTSELL, Plaintiff, v. DEPARTMENT OF VETERAN AFFAIRS, Defendant.

**Prior History:** *Hootsell v. Dep't of Veteran Affairs, 2013 U.S. Dist. LEXIS 199208 (E.D. Wis., Dec. 3, 2013)*

**Counsel:** **[*1]** Jearlean Hootsell, Plaintiff, Pro se, Glendale, WI.

For Department of Veteran Affairs, Defendant: Lennie Lehman, United States Department of Justice (ED-WI), Office of the US Attorney, Milwaukee, WI.

**Judges:** WILLIAM E. CALLAHAN, JR., United States Magistrate Judge.

**Opinion by:** WILLIAM E. CALLAHAN, JR.

## Opinion

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL

### I. PROCEDURAL BACKGROUND

On October 31, 2013, the plaintiff, Jearlean Hootsell ("Hootsell"), filed a *pro se* complaint against defendant Department of Veteran Affairs, alleging that she slipped and fell on water as she entered an elevator at the Veterans Affairs ("VA") hospital in Milwaukee, Wisconsin. Hootsell asserts that she sustained injuries as a result of this fall for which she was treated at the VA hospital. Hootsell further asserts that she "generated a bill" for her treatment, and the Department of Veteran Affairs denied her claim. (Compl. 3, 6.) Consequently, Hootsell is seeking compensatory damages for her injuries. The parties have consented to magistrate judge jurisdiction. *See* *28 U.S.C. § 636(c)*; *Fed. R. Civ. P. 73(b)(1)*.

On January 2, 2014, the Department of Veteran Affairs filed a motion to dismiss for lack of subject matter **[*2]** jurisdiction, pursuant to *Fed. R. Civ. P. 12(b)(1)*, and for failure to state a claim upon which relief can be granted, pursuant to *Fed. R. Civ. P. 12(b)(6)*. As grounds to support its motion to dismiss, the Department of Veteran Affairs asserts that Hootsell failed to exhaust her administrative remedies as required under the Federal Tort Claims Act ("FTCA"). In the alternative, the Department of Veteran Affairs maintains that Hootsell's complaint must be dismissed under *28 U.S.C. § 2679(a)* because the only proper defendant is the United States.

On January 8, 2014, Hootsell filed a letter and several exhibits, which the court will construe as Hootsell's response to the defendant's motion to dismiss. In her letter, Hootsell also requests that the court appoint her legal representation. The defendant did not file a reply. Accordingly, the defendant's motion to dismiss is now ready for resolution. For the reasons that follow, the defendant's motion to dismiss will be granted, and the plaintiff's motion to appoint counsel will be denied as moot.

## II. FACTUAL BACKGROUND

On January 23, 2008, Hootsell slipped and fell in an elevator at the Zablocki Veteran's Administration Medical Center. A "code five" was announced, and Hootsell was lifted from the floor and **[*3]** onto a wooden stretcher. (Compl. 3, 6.) Hootsell was treated at the VA hospital for her injuries. As a result of this treatment, she generated a $298.00 hospital bill. (Pl.'s Resp. 2.) Hospital staff found water on the elevator floor, (Compl. 6), and the food service department supervisor and staff workers admitted leaving water on the elevator floor after delivering food to patients, (Pl.'s Resp. 1).

On November 27, 2012, Hootsell filed an administrative tort claim with the Office of Regional Counsel Department of Veterans Affairs in Milwaukee, using its Standard Form 95, "Claim for Damage, Injury, or Death." On the form, Hootsell indicated that she sustained injuries to her back and spine as a result from her fall in the elevator at the VA hospital. (Def.'s Br., Ex. A.) Hootsell asserted that she did not have insurance at the time she suffered her injuries. She further indicated that she received additional treatment for her back injury, she was taking medication for the pain, and she was being seen at St. Joseph's Hospital in Milwaukee for a degenerative spine. Hootsell listed the amount of her claim as $150,000.

## III. DISCUSSION

The United States is sovereign and immune from being **[*4]** sued without its consent. *See* *Macklin v. United States, 300 F.3d 814, 820 (7th Cir. 2002)*. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and is "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996)*. Therefore, "the terms of the [United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)*.

In enacting the FTCA, Congress has waived the Government's sovereign immunity by providing an exclusive remedy for certain torts of federal employees acting within the scope of their employment. *See* *28 U.S.C. §§ 2671-2680*; *see also* *United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976)*. Specifically, under the FTCA, the United States is responsible for the tortious conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." *See* *28 U.S.C. § 2674*. However, the FTCA requires the exhaustion of administrative remedies prior to suing the federal government in tort. *See* *28 U.S.C. § 2675(a)*; *see also* *Frey v. EPA, 270 F.3d 1129, 1135 (7th Cir. 2001)*; *Kanar v. United States, 118 F.3d 527, 528 (7th Cir. 1997)*. Specifically, the exhaustion requirement reads as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency **[*5]** and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

*28 U.S.C. § 2675(a)*. Likewise,

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the

claim by the agency to which it was presented.

28 U.S.C. § 2401(b). These exhaustion requirements have been strictly applied, notwithstanding when the claimant proceeds without counsel. *See* McNeil v. United States, 508 U.S. 106, 111-13, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993).

Whether the exhaustion requirement is jurisdictional in nature is not quite so clear. Although the Seventh Circuit has held that a failure to exhaust administrative remedies deprives the district court of subject matter jurisdiction over the claim, *see* Garcia v. Meza, 235 F.3d 287, 290 (7th Cir. 2000), its more recent discussions seem to indicate that the failure to exhaust is probably not a jurisdictional matter, but rather a precondition to **[*6]** the plaintiff's statutory right to relief, *see* Frey, 270 F.3d at 1135. The *Frey* court noted in dicta that it "might be appropriate to revisit the jurisdictional language in decisions such as Garcia" because it was "not so sure" that the holding that failure to exhaust results in a deprivation of subject matter jurisdiction "is technically correct." Id. at 1135-36.

Since Frey, district courts within the Seventh Circuit have analyzed a failure to exhaust as a failure to comply with the elements of a federal statute, thereby addressing exhaustion under Fed. R. Civ. P. 12(b)(6), not 12(b)(1). *See, e.g,* Prewitt v. United States, 2010 U.S. Dist. LEXIS 80737, at *3-4 (N.D. Ill. Aug. 9, 2010) (dismissing certain claims within the plaintiff's complaint for failing to "suggest a plausible right to relief" when her complaint did not reference presenting her claims to the Social Security Administration before filing her federal lawsuit); Feistel v. United States Postal Serv., 2008 U.S. Dist. LEXIS 121259, at *2-5 (E.D. Wis. May 12, 2008) (taking judicial notice of exhaustion defects and dismissing plaintiffs' claim under Rule 12(b)(6)); Repa v. Roadway Express, Inc., 2005 U.S. Dist. LEXIS 44766, at *2 n.1 (E.D. Wis. Sept. 16, 2005) ("[W]hen an individual fails to comply with the elements of the federal statute, the individual 'will not prevail, but the court's power to adjudicate the case is clear, and a dismissal should be predicated on Federal Rule of Civil Procedure 12(b)(6), not on 12(b)(1).'" (quoting Frey, 270 F.3d at 1132)).

Because the court is not persuaded that exhaustion is necessarily a jurisdictional **[*7]** matter, the court will address the Department of Veteran Affairs's motion to dismiss Hootsell's complaint for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(6).

A motion pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Rather, a plaintiff's complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, the plaintiff must "nudge[] [her] claims across the line from conceivable to plausible." Id. at 570.

Here, Hootsell indicates in her complaint that she "would like the court to reconsider the denial from V.A. hospital regarding claim number 329/02." (Compl. 6.) However, Hootsell has not provided any additional **[*8]** information with respect to her administrative claim. More precisely, Hootsell's complaint is silent on when she filed this claim. Generally, if a court must look outside the

pleadings to rule on a 12(b)(6) motion, it is necessary to "convert" the motion to dismiss into a summary judgment motion under Fed. R. Civ. P. 12(d). However, the court may take judicial notice of the fact that a plaintiff has failed to exhaust her administrative remedies without converting a motion to dismiss into a summary judgment motion. *See* Feistel, 2008 U.S. Dist. LEXIS 121259, at *4 (taking judicial notice of the plaintiffs' failure to timely exhaust); Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (acknowledging that the district court did not err when it considered the plaintiff's Standard Form 95 because, "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record"). Likewise, a court "may also consider documents referred to in a plaintiff's complaint and attached to a motion to dismiss if they are central to the plaintiff's claim, even if the plaintiff did not attach them to [her] complaint." Davis v. Potter, 301 F. Supp. 2d 850, 856 (N.D. Ill. 2004) (citing *Duferco Steel, Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997)*).

The Department of Veteran Affairs attached a copy of Hootsell's administrative claim—filed via Standard Form 95—to its memorandum in support of its **[*9]** motion to dismiss. (Def.'s Br., Ex. A.) Hootsell signed the form on November 27, 2012, and it was received by the Office of Regional Counsel Department of Veterans Affairs on November 29, 2012. On the form, Hootsell lists the date of her accident as January 23, 2008. Thus, Hootsell missed the two-year statute of limitations deadline outlined in 28 U.S.C. § 2401(b) by nearly three years (that is, two years and ten months). These agency records are reliable, and in this case, uncontested.[1] Therefore, the court takes judicial notice of Hootsell's failure to timely exhaust.

Because Hootsell has failed to timely exhaust her administrative remedies, which is a statutory precondition to filing a claim under the FTCA, her complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Accordingly, the plaintiff's motion to appoint counsel will be denied as moot.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss (ECF No. 8) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (ECF No. 11) be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**FINALLY, IT IS ORDERED** that the **[*10]** Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 17th day of March 2014, at Milwaukee, Wisconsin.

**BY THE COURT**:

/s/ William E. Callahan, Jr.

WILLIAM E. CALLAHAN, JR.

United States Magistrate Judge

End of Document

[1] In her response to the Department of Veteran Affairs's motion to dismiss, Hootsell does not dispute that her administrative claim was not timely filed. Rather, Hootsell argues that she was unable to "attend to this tort claim" because she suffered a "nervous [b]reakdown" and had to care for her now-deceased husband. (Pl.'s Resp.) The court is not unsympathetic to the plaintiff's situation. However, as stated above, the exhaustion requirements concerning the FTCA are strictly applied.

# Omegbu v. United States

United States District Court for the Eastern District of Wisconsin

July 18, 2011, Decided; July 18, 2011, Filed

Case No. 10-C-765

**Reporter**

2011 U.S. Dist. LEXIS 77928 *; 2011 WL 2912703

FIDELIS I. OMEGBU, Plaintiff, v. UNITED STATES OF AMERICA, Defendant.

**Subsequent History:** Affirmed by *Omegbu v. United States, 2012 U.S. App. LEXIS 7395 (7th Cir. Wis., Apr. 12, 2012)*

**Prior History:** *Omegbu v. Milwaukee County, 326 Fed. Appx. 940, 2009 U.S. App. LEXIS 9217 (7th Cir. Wis., 2009)*

**Counsel:** **[*1]** Fidelis I Omegbu, Plaintiff, Pro se, Milwaukee, WI.

For United States of America, Defendant: Brian E Pawlak, United States Department of Justice (ED-WI), Office of the US Attorney, Milwaukee, WI.

**Judges:** WILLIAM E. CALLAHAN, JR., United States Magistrate Judge.

**Opinion by:** WILLIAM E. CALLAHAN, JR.

## Opinion

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. PROCEDURAL BACKGROUND

The plaintiff, Fidelis I. Omegbu ("Omegbu"), filed a pro se complaint against the defendant, the United States of America, on September 3, 2010. As best as the court can discern, Omegbu alleges a violation of the Federal Tort Claims Act ("FTCA"), *28 U.S.C. §§ 2671 et seq.*, and the Federal Privacy Act, *5 U.S.C. § 552a*, among other claims.[1] Omegbu is seeking $18 million in various types of damages. Both parties have consented to magistrate judge jurisdiction. *See* *28 U.S.C. § 636(c)*; *Fed. R. Civ. P. 73(b)(1)*. This action is now before the court on the defendant's motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(1)* and *12(b)(6)*, or in the alternative, for summary judgment pursuant to *Fed. R. Civ. P. 56*. Now that the motion has been fully briefed, it is ready for resolution. For the reasons that follow, the defendant's motion will be **[*2]** granted.[2]

### II. FACTUAL BACKGROUND

As a foreign national, the plaintiff immigrated to the United States from Nigeria in 1978. (Compl. ¶ 24.) The plaintiff was approved for permanent residence on February 24, 1992, and applied for naturalization on March 21, 1996. (Compl. ¶¶ 5, 7.) As part of the application process, **[*3]** the plaintiff filled out a Form N-400 with United States

---

[1] Omegbu makes several other allegations in his complaint regarding his prior arrest for voter fraud. These allegations were not only litigated in a previous lawsuit, *see* *Omegbu v. Milwaukee County, No. 05-C-596, 2007 U.S. Dist. LEXIS 7878 (E.D. Wis.)*, but they also do not reflect what, if any, involvement the United States had in such allegations. Therefore, this court will confine its discussion to those claims asserted against the United States.

[2] The Government also filed a motion to strike Omegbu's response in opposition to its motion to dismiss because Omegbu did not seek permission from the court to file a memorandum that exceeded the maximum page limit by ten pages. *See* Civ. *L.R. 7(f)*, *56(b)(8)(A-B)*. However, even if considered in its entirety, Omegbu's response memorandum does not overcome the Government's motion to dismiss, and therefore, the Government's motion to dismiss will be denied as moot.

Citizenship and Immigration Services ("USCIS"). (Compl. ¶ 7.) On the form, the plaintiff answered "no" when asked if he had ever "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations." (Compl. ¶ 11; Glaudell Dec. ¶ 5, Attach. A.) As part of the normal vetting process, USCIS conducted a criminal background check on the plaintiff. (Glaudell Dec. ¶5.) The Federal Bureau of Investigation ("FBI") provided the plaintiff's criminal history, which indicated that Omegbu had been arrested on April 8, 1994, for theft. (*Id.*) On March, 18, 1997, the USCIS Milwaukee office interviewed the plaintiff in conjunction with his application for naturalization. (Compl. ¶ 8.) The plaintiff again failed to disclose his prior arrest during the interview. (Glaudell Dec. ¶ 6.)

On December 31, 1997, USCIS sent a letter to the plaintiff, informing him of its decision to deny the plaintiff's application for naturalization. (Glaudell Dec. ¶ 7.) In the letter, USCIS told the plaintiff that his application had been denied because of a finding of lack of good moral **[*4]** character. (*Id.*) Specifically, the plaintiff was denied for failing to disclose his prior arrest on the application and during his interview. (*Id.*) The letter further informed the plaintiff of his right to request a review hearing on the decision within thirty days of the decision, otherwise the decision would become final. (Glaudell Dec. ¶ 7, Attach. C.) The plaintiff never disputed the arrest or requested a review of the denial decision. (Glaudell Dec. ¶ 9, Attach. D.)

On March 28, 2008, the plaintiff received a copy of his Alien file from USCIS through the Freedom of Information Act. (Compl. ¶ 40.) In the plaintiff's Alien file was the criminal background of a James Earl Bailey, who had been arrested a total of seven times, including arrests in 1992, 1995, 1996 and 1999. (Compl. ¶ 42; Glaudell Dec. ¶ 9, Attach. D.) In February 2009, the plaintiff submitted an administrative tort claim to the United States Department of Justice, alleging that he was "intentionally wrongfully identified to be someone[] else, and was denied naturalization on account of" the third party's criminal record being placed in his Alien file by the FBI. (Pawlak Dec. ¶ 2, Attach. 1.)

The plaintiff now files this **[*5]** action in federal court. In his complaint, the plaintiff alleges three counts, which are described as follows: Count I—Violations of the FTCA, Count II—Violation of the Plaintiff's Privacy Rights, and Count III—Violation of Plaintiff's Federal, Constitutional and Statutory Rights. (Compl. ¶¶ 127-79.) Counts I and III relate primarily to the plaintiff's denial for naturalization. Count II relates to those events in 2002 prior to his arrest, when the plaintiff maintains the Milwaukee County Election Commissioner's Office ("MCEC") violated his federal right to privacy by releasing to the press false information regarding his criminal record without permission from the plaintiff. (Compl. ¶¶ 146-154.)

## III. DISCUSSION

I will address Omegbu's allegations as follows: (1) intentional tort claim related to the misrepresentation of information in the plaintiff's Alien file, (2) constitutional tort claim, and (3) violations of the plaintiff's right to privacy.

### A. Intentional Tort Claim

On ruling on a *Rule 12(b)(1)* motion, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993)*. **[*6]** A court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction. *Id.* However, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Grafon Corp. v.*

Hausermann, 602 F.2d 781, 783 (7th Cir. 1979)).

The United States is sovereign and immune from being sued without its consent. *See* Macklin v. United States, 300 F.3d 814, 820 (7th Cir. 2002). A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and is strictly construed, in terms of its scope, in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996). Therefore, the terms of the United States's consent to be sued in any court define that court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941).

Congress has waived the Government's sovereign immunity in enacting the FTCA by providing an exclusive remedy for certain torts of federal employees acting within the scope of their employment. 28 U.S.C. §§ 2671 et seq. *See also* United States v. Orleans, 425 U.S. 807, 813, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976). **[*7]** Specifically, under the FTCA, the United States is responsible for the tortious conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674. However, the FTCA also provides specific exceptions where the United States has not waived its sovereign immunity. 28 U.S.C. § 2680. Among those exceptions is the "intentional tort" exception: "[t]he provisions of this chapter . . . and section 1346(b) of this title . . . shall not apply to—[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680(h).

The plaintiff maintains that the defendants—being either the FBI or USCIS—both intentionally and negligently added the criminal record of a third party into his Alien file, causing the denial of his application for naturalization. (Compl. ¶¶ 3, 45, 131.) The Seventh Circuit has held that allegations of willful mishandling of records are intentional tort claims and are thus barred by the intentional tort exception of the FTCA. In Deloria v. Veterans Administration, 927 F.2d 1009, 1010 (7th Cir. 1991), **[*8]** the plaintiff alleged that the Veteran's Administration conspired to alter his medical records and deny him veterans' disability benefits. The Seventh Circuit upheld the district court's decision to dismiss the claim, holding that the plaintiff's allegations were the same as a claim of misrepresentation or deceit and therefore fell under the intentional tort exception of the FTCA:

> Deloria cannot sidestep the statutory limits of the FTCA by artfully couching his complaint in different jargon and pleading that VA officials conspired to deprive him of his benefits through alteration of his records. . . . [T]he United States retains its sovereign immunity with respect to charges of deceit and misrepresentation — regardless of the technical terms in which they are framed . . . .

Id. at 1012-13. Therefore, the mishandling of information is tantamount to misrepresentation or deceit and is therefore barred by 28 U.S.C. § 2680(h). *See id.*

Courts, including the Supreme Court, have also held that claims arising out of negligent representation are barred by § 2680(h). For example, in United States v. Neustadt, 366 U.S. 696, 81 S. Ct. 1294, 6 L. Ed. 2d 614 (1961), the Court stated as follows:

> To say . . . that a claim arises out of **[*9]** "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, *i.e.,* the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly

> understood legal definition of the tort of "negligent misrepresentation," . . . and which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in § 2680(h).

Id. at 706-07. *See also* Talbert v. United States, 932 F.2d 1064 (4th Cir. 1991) (holding claim for negligent recordkeeping of employment records to be barred under § 2680(h), stating that "[a]rtful pleading cannot alter the fact that his claim 'resounds in the heartland of the tort of defamation'"); Alexander v. United States, 787 F.2d 1349 (9th Cir. 1986) (holding that claim that government negligently failed to remove from plaintiff's record information the state court allegedly ordered expunged was actually a claim for misrepresentation barred by § 2680(h)); Bergman v. United States, 751 F.2d 314 (10th Cir. 1984) **[*10]** (involving a claim that the government negligently failed to correct classification records and holding the claim to be barred by § 2680(h) immunity for claims arising from misrepresentation, deceit and slander).

The plaintiff's allegation that the FBI or USCIS misrepresented information—whether intentionally or negligently—falls under the intentional tort exception of § 2680(h). Because the Seventh Circuit has previously ruled that the mishandling of records is equivalent to misrepresentation or deceit, and because the Court has indicated that any loss caused by even a negligent breach of a certain duty is equivalent to misrepresentation, the plaintiff is barred by sovereign immunity from bringing his intentional tort claim against the United States. Accordingly, such claim will be dismissed due to lack of subject matter jurisdiction.[3]

## B. Constitutional Tort Violations

Omegbu also broadly and vaguely alleges in his complaint several constitutional tort claims. Specifically, he alleges violations against his First, Fifth, Fourteenth and Fifteenth Amendment rights. (Compl. ¶¶ 76, 115-118, 123-126.) The FTCA provides that the United States does not waive its sovereign immunity when it comes to violations of the constitution: "[The FTCA] does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Therefore, the plaintiff's constitutional allegations cannot be brought under the FTCA because the United States retains its sovereign immunity with respect to constitutional tort claims. Those allegations are therefore dismissed due to lack of subject matter jurisdiction.

## C. [*12] Violation of the Plaintiff's Right to Privacy

The defendant also moves to dismiss Omegbu's right to privacy claim for failing to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). A motion pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. A plaintiff's complaint only needs to provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is also sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

[3] Even if Omegbu's claim was a proper subject before the court, it appears that Omegbu's claim that the Federal Government misrepresented the information in his Alien file has little merit because his application for naturalization was denied because he failed to disclose his 1994 theft, not because the USCIS took into account Mr. Bailey's criminal record. **[*11]** Secondly, Mr. Bailey's criminal record was not placed in Omegbu's Alien file until after his application for naturalization was denied. The report date on Mr. Bailey's record is June 16, 1999, while Omegbu's application was denied approximately one and half years earlier, in December 1997.

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to the probability **[*13]** standard. *Id.* A plaintiff's complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, the plaintiff must "'nudge[] his claims' . . . 'across the line from conceivable to plausible.'" *Iqbal, __ U.S. __, 129 S. Ct. at 1950-51*.

The plaintiff alleges that the Federal Government violated his federal right to privacy. (Compl. ¶¶ 141-161.) However, throughout his complaint, the plaintiff directs his allegations towards the Milwaukee County Elections Commission ("MCEC") and its employees. (*Id.*) The Federal Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of record by any means of communication to any person, or to another agency . . . ." 5 U.S.C. § 552a(b). Agency is defined as "each authority of the Government of the United States," although there are some noted exceptions to this definition. 5 U.S.C. § 551. Because the MCEC is a non-federal entity (and not shown to be an authority of the Government of the United States), there is no cause of action against the United States under the Federal Privacy Act for conduct allegedly committed by the **[*14]** MCEC. Therefore, the plaintiff's privacy claim fails to state a claim under the Federal Privacy Act and will therefore be dismissed.

Finally, Omegbu's Federal Privacy Act claim must also be dismissed on other grounds. The plaintiff argues that his right to privacy was violated by MCEC and its employees in 2002. (Compl. ¶ 149.) However, the Privacy Act provides for a statute of limitations of only two years from the date the cause of action arises. 5 U.S.C. § 552a(g)(5). Therefore, because the complaint was filed in 2010, the statute of limitations has run, and the plaintiff's claim under the Federal Privacy Act will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss be and hereby is **GRANTED;**

**IT IS FURTHER ORDERED** that the defendant's motion to strike plaintiff's memorandum be and hereby is **DENIED** as moot;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 18th day of July 2011 at Milwaukee, Wisconsin.

**BY THE COURT:**

/s/ William E. Callahan, Jr.

WILLIAM E. CALLAHAN, JR.

United States Magistrate Judge

---

End of Document