U.S. District Court
Wisconsin Eastern
OCT 19 2026
FILED
Clerk of Court

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WISCONSIN**

**GREEN BAY DIVISION**

---

**Adam Sturdevant, Plaintiff**

**v.** **Case No. 26-cv-01294**

**United States of America, Defendant**

---

# Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss

---

Plaintiff requests denial of the Government's motion to dismiss his claim for loss of liberty and related injuries caused by the Navy's alleged failures in administering authorized leave, separation processing, and personnel records. The motion presents three distinct questions: whether limitations can be resolved on the pleadings despite Plaintiff's factual explanation for tolling; whether the alleged operational failures fall within the FTCA's misrepresentation exception; and whether a claim concerning Navy confinement requires review of a VA benefits decision. The accompanying declaration and dated exhibits support consideration of those questions separately. Alternatively, Plaintiff requests leave to cure specific pleading deficiencies and, if the limitations issue is converted under Rule 12(d), a reasonable opportunity to present pertinent material.

## I Claim accrual and equitable tolling

### A The limitations defense must be evaluated under Rule 12

The Government requests dismissal of the limitations issue under Rule 12(b)(6). Plaintiff does not characterize that request as a jurisdictional ruling. *United States v. Wong*, 575 U.S. 402 (2015), establishes that § 2401(b) is nonjurisdictional and permits equitable tolling in an appropriate case. Plaintiff asks the Court to consider his additional factual explanation insofar as it is consistent with the complaint. See *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

*Watkins v. Mohan*, 144 F.4th 926, 941–47 (7th Cir. 2025), reversed dismissal of an FTCA claim where a supported tolling explanation required factual development. Its procedural teaching applies here: the Court should distinguish a claimant's ultimate burden to prove tolling from the sufficiency of his factual explanation at the pleading stage. Plaintiff identifies an official statement, his asserted reliance, dated efforts to obtain relief, and specific notice and record-access problems. Those allegations permit a focused inquiry into their effect and duration. *Watkins* involved prison restrictions and pandemic-related obstacles, not decades of reliance on separation advice; Plaintiff relies on its procedural analysis, rather than equating those factual settings.

The Government's reliance on *McNeil v. United States*, 508 U.S. 106, 111–13 (1993), does not foreclose that inquiry. *McNeil* requires administrative exhaustion before suit even for a pro se claimant. Plaintiff does not request an exemption from presentment: his April 2025 SF-95 preceded this lawsuit. The disputed question is whether that presentment was timely under accrual and tolling principles. Similarly, *Hootsell v. Department of Veterans Affairs*, No. 13-C-

1221, 2014 U.S. Dist. LEXIS 196378, at *8–10 & n.1 (E.D. Wis. Mar. 17, 2014), involved an uncontested late administrative claim following a known fall. It predates *Wong* and does not establish that every asserted tolling basis fails without examination. Plaintiff's pro se status alone is not a ground to excuse the deadline.

The accompanying declaration and exhibits identify the factual basis of Plaintiff's explanation. Plaintiff asks that the Court consider consistent factual elaboration under *Geinosky* and *Watkins*. If resolution of the Rule 12(b)(6) limitations defense requires consideration of outside evidence beyond materials properly considered on the pleadings, Rule 12(d) requires conversion and a reasonable opportunity for both parties to present pertinent material. Plaintiff requests that opportunity, with any factual development confined to reliance, access to records, diligence, and the periods alleged to warrant tolling. This request does not depend on treating limitations as jurisdictional or on applying the rules for a factual jurisdictional challenge to the limitations defense.

If the Court concludes that the existing allegations require greater specificity, Plaintiff alternatively requests an opportunity to amend to provide a focused chronology of his investigation, official statements, record access, and the circumstances asserted to have prevented timely presentment, unless the Court determines that amendment would be futile. Any factual development should be directed to those identified issues. Plaintiff does not contend that an unresolved question about the merits of the Navy's conduct, standing alone, establishes equitable tolling.

## B Knowledge of injury and discovery of its cause

Under *United States v. Kubrick*, 444 U.S. 111 (1979), a federal tort claim generally accrues when the claimant knows, or reasonably should know, of the injury and its cause. Knowledge of the government's legal negligence is not required.

Plaintiff knew of his apprehension and confinement in 1992. The disputed question is what he then knew or reasonably could discover about the administrative failures that allegedly caused those events. Later records concerning approved leave, the unauthorized-absence designation, separation authorization, and military pay bear on that factual inquiry. They do not make knowledge of a legal remedy a condition of accrual.

The records reveal an unresolved discrepancy. The Navy's May 1991 administrative-leave documentation and separation instructions contemplated leave pending disposition of Plaintiff's administrative separation. Nevertheless, TPU Philadelphia recorded Plaintiff as unauthorized absent on May 28, 1991, and the Navy subsequently designated him a deserter.

Plaintiff states that he was never informed that his approved administrative leave had been canceled or suspended and was never instructed to return to duty before the unauthorized-absence designation.

Plaintiff pursued correction of military records and access to VA benefits against the background of the Navy's recorded status determinations. Those efforts and the information available during them bear on discovery of the alleged administrative failures. Under *Kubrick*, the inquiry concerns knowledge of injury and cause, rather than the date Plaintiff learned that those facts might support an FTCA action. 444 U.S. at 122–24.

The October 2019 submission expressly connected Plaintiff's confinement with the disputed leave and separation records. Exhibit 5. That submission is important evidence of causal knowledge and must be included in the limitations analysis. Plaintiff therefore presents equitable tolling as an alternative ground for relief even if the Court concludes that accrual occurred by 2019 or earlier. The later DFAS production supplies corroboration, not an independent restart of the limitations period.

*Goodhand v. United States*, 40 F.3d 209, 212–15 (7th Cir. 1994), cited by the Government, applies the rule that a claimant need not know the full extent of injury or that the conduct was negligent. It also distinguishes knowledge of one injury-producing event from discovery of a separate factual cause. The court remanded the claim concerning negligent repair because the record did not establish when that cause was reasonably discoverable. Here, Plaintiff asks the Court to examine what he knew about the alleged administrative failures, rather than treating the date of confinement as a complete account of his knowledge. The analogy does not make every later-discovered document a separate tort or postpone accrual until proof is conclusive.

**C Continuing investigation and the DFAS production**

Before presentment, Plaintiff learned of a previously unknown avenue for obtaining evidence. He recalls that, during the winter of 2024 or early 2025, his friend Jason, a Marine, told him that he could obtain historical military pay information from DFAS. Plaintiff had not previously known that he could access those records. The date is approximate. This conversation helped advance his investigation before the April 2025 administrative claim. Declaration ¶ 15. It is distinct from both receipt of the DFAS records in December 2025 and the favorable VA determination later in 2025.

Plaintiff presented his administrative tort claim to the Navy in April 2025. His investigation continued afterward. His September 26, 2025 reconsideration submission expressly identified historical Navy pay records as forthcoming evidence and stated that they would be supplied upon receipt. A written Privacy Act request for those records is dated September 27, 2025. DFAS issued its response and initiated electronic delivery on December 18, 2025. Plaintiff downloaded the records that day and reviewed them with analytical assistance. Declaration ¶¶ 9–12; Exhibits 1, 6, 8–9.

This sequence distinguishes learning that records were accessible, presenting the claim, and receiving corroborating records afterward. Jason's information supplies a concrete step in Plaintiff's investigation before presentment and bears on his conduct during that period. Plaintiff offers it as evidence of his investigative efforts, rather than claiming that learning of DFAS access alone delayed accrual or automatically established an extraordinary obstacle. The tolling inquiry remains whether the identified circumstances prevented timely presentment despite reasonable diligence.

**D Reliance on official information and pursuit of relief**

In *United States v. Wong*, 575 U.S. 402 (2015), the Supreme Court held that the FTCA's limitations provision is not jurisdictional and is subject to equitable tolling.

Equitable tolling nevertheless requires a claimant to demonstrate diligent pursuit of his rights and extraordinary circumstances beyond his control that prevented timely filing. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250 (2016).

During his April 1992 separation processing, Plaintiff recalls asking Navy personnel representative P. A. Wallace whether he had a legal claim arising from his treatment. Wallace

allegedly told him that he could not sue the military. Declaration ¶¶ 3–4. The asserted obstacle is the effect of that official response on Plaintiff's pursuit of a damages remedy; intentional deception is not alleged.

Plaintiff's explanation is not limited to an unexplained failure to discover the name of a statute. He states that he repeatedly asked veterans service representatives about suing the military and was told that he could not sue and that a discharge upgrade and VA benefits were his only available avenues. Without legal counsel assisting him with a damages claim, he relied on that guidance and pursued both routes, either taking steps to obtain review or awaiting records and responses, including during 2022 through early 2025. Declaration ¶ 14. He believed an upgrade was needed for VA to listen, while also challenging the deserter characterization through VA. Those efforts identify what he did in reliance on the advice, rather than merely asserting that he lacked legal knowledge.

The subsequent sequence identifies how Plaintiff's investigation expanded. Jason's conversation during the winter of 2024 or early 2025 introduced access to DFAS information. Further investigation with AI assistance revealed the FTCA remedy, which Plaintiff then pursued through his April 2025 administrative claim. Declaration ¶¶ 15–16. Plaintiff does not recall exact dates for every conversation or the first discovery of the FTCA. He offers his personal recollection of continued efforts, repeated advice, and reliance, supported by the dated examples in the record. The October 17, 2019 email to a representative named Nick likewise describes earlier incomplete record productions and asks for continued assistance despite Plaintiff's impending move. That email supplies an example of pursuit in 2019; it is not offered as documentary proof of every later step.

The account of Wallace's statement appears in Plaintiff's April 2025 administrative materials, including his declaration concerning P. A. Wallace executed April 10, 2025. It was not first advanced in response to the Government's dismissal motion. Plaintiff identifies the encounter as occurring during his April 1992 discharge processing; the original narrative's reference to a "1991 discharge" does not accurately state the date of that encounter. Declaration ¶¶ 3–4; Exhibit 2 (originally Exhibit H to the administrative claim).

Plaintiff thereafter pursued administrative avenues concerning his discharge and military status. His documented efforts include an application received by the Naval Discharge Review Board on December 21, 2006, the Board's adverse decision dated September 27, 2007, and subsequent VA proceedings in which Plaintiff challenged the consequences of his military records.

The service chronology included in the 2007 Board decision records Plaintiff's deserter designation and states that the Navy declined to prosecute the unauthorized absence while retaining it as lost time for administrative and pay purposes. Later VA submissions continued to raise Plaintiff's allegations concerning his arrest, confinement, discharge processing, and the underlying administrative records. Exhibit 3.

The June 9, 2014 HCRV correspondence documents assistance with a discharge upgrade. The October 3, 2014 VA letter requested evidence for a character-of-discharge determination; it was not a final denial. Plaintiff subsequently challenged adverse character-of-discharge findings and states that the complete July 1, 2016 decision was not furnished to him until September 2025. His notarized September 2025 affidavit describes the delivery and identification problems. These proceedings document efforts concerning the disputed military records; Plaintiff does not equate them with timely FTCA presentment. Declaration ¶¶ 5–8; Exhibits 3–5, 7.

The record also documents activity after the October 2019 submission. The Navy issued a DD Form 215 correcting Plaintiff's name on February 10, 2020. VA's December 20, 2021 letter acknowledges receipt of his higher-level review request on December 14, 2021, but rejects it as late by reference to the October 10, 2019 notice. A responsive attachment bearing a January 10, 2022 VA intake stamp contests that conclusion, explains the asserted delivery problem under his former name, and identifies assistance from the Shawano County veterans service office. These documents identify specific steps to obtain review during that interval. Declaration ¶ 13; Exhibit 10, pp. 1–3.

The same exhibit includes Plaintiff's representative's June 23, 2025 statement describing the earlier appeal process. According to that statement, Plaintiff immediately submitted a Board appeal using the form furnished with the October 2019 denial, after which the Board advised that the form was improper because no decision had been made under the applicable review system. The representative also reported being unable to locate a complete 2016 character-of-discharge determination and adequate notice in the claims file. Exhibit 10, pp. 4–5. Plaintiff identifies these as the representative's account of the records; the underlying Board correspondence is not included in this exhibit. Together with the contemporaneous 2020–2022 documents, this account supplies concrete support for continued pursuit of administrative review and difficulties obtaining usable notice.

Plaintiff further explains that the favorable VA character-of-discharge determination changed his belief that the deserter characterization made further relief pointless. The decision established eligibility for VA benefits, overcame the stated misconduct bar through compelling circumstances, and did not apply the statutory bar for discharge as a deserter. See 38 U.S.C. § 5303(a)–(b). Plaintiff understood that outcome as opening a door that had previously appeared

closed; learning about the FTCA with AI assistance also informed his pursuit of a damages remedy. He offers this explanation to describe his understanding and continued pursuit of relief, rather than as an assertion that the VA adjudicated the legality of his confinement or formally removed the Navy's deserter designation. The favorable decision discusses evidence received in July 2025 and therefore postdates the April 2025 tort claim. It bears on his subsequent pursuit of relief, not an event that could have prompted the initial presentment or independently established timely accrual. The earlier period remains subject to the diligence and extraordinary-circumstances requirements discussed above.

The dated submissions support an affirmative showing of continued efforts to challenge the military records and their consequences. Plaintiff asks the Court to assess that conduct together with the alleged official advice and the documented problems obtaining usable decisions and notice. The relevant questions are whether these circumstances prevented timely FTCA presentment despite reasonable diligence, when any qualifying obstacle ceased, and whether Plaintiff acted reasonably thereafter. This inquiry preserves both requirements of *Menominee* rather than treating benefits proceedings as an automatic suspension of the FTCA deadline. 577 U.S. at 255–57.

The Seventh Circuit has recognized that misleading agency information can support examination of equitable tolling without proof of intentional deceit. *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 80–81 (7th Cir. 1992); *Ballard v. Ameren Illinois Co.*, No. 25-1562, slip op. at 11–13 (7th Cir. Apr. 28, 2026). Both cases concerned agency communications about the filing process in employment disputes against private defendants. Here, the statement allegedly came from Navy personnel during separation processing. Plaintiff invokes the cases for consideration

of the statement's context, effect, and the claimant's diligence; their different facts do not establish the reasonableness or duration of reliance here.

*Arteaga v. United States*, 711 F.3d 828, 831–34 (7th Cir. 2013), forecloses postponing accrual merely until discovery of the FTCA and rejects ordinary legal error as a substitute for diligence. Plaintiff instead requests assessment of the full course of repeated requests for guidance, reliance on advice limiting his available avenues, continued administrative pursuit, and identified record-access and notice problems. The VSO and service-organization advice is distinct from Wallace's alleged Navy statement; Plaintiff does not assume that every representative was a federal employee or that the advice is attributable to the United States. Nor does later access to AI research itself establish an extraordinary circumstance. These facts explain Plaintiff's conduct and support evaluation of his asserted diligence and reliance. He remains responsible for showing that a qualifying circumstance actually prevented timely presentment, including during the period after the 2019 submission. The declaration supplies his account of that interval rather than leaving his conduct wholly unexplained.

## II The misrepresentation exception requires examination of the alleged duty and conduct

The United States invokes the misrepresentation exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(h), as a basis for dismissal. Plaintiff respectfully submits that this argument fails to distinguish between the negligent communication of information and the negligent performance of independent administrative responsibilities.

In *United States v. Neustadt*, 366 U.S. 696 (1961), the Supreme Court held that § 2680(h) bars claims arising from negligent misrepresentations, including claims in which the plaintiff's injury results from reliance upon inaccurate information supplied by government personnel.

The Supreme Court subsequently clarified the limits of that exception in *Block v. Neal*, 460 U.S. 289 (1983). There, the Court distinguished a claim based upon reliance on erroneous government information from a claim alleging the negligent performance of an independent operational duty. The Court explained that the presence of inaccurate communications does not necessarily transform an otherwise actionable negligence claim into one arising from misrepresentation.

Plaintiff's allegations concern the Navy's handling of previously authorized administrative leave, separation processing, and conflicting personnel-status determinations. Plaintiff alleges that Navy personnel failed to reconcile these administrative actions before the adverse deserter designation became the basis for further governmental action.

The alleged causal chain begins with the Navy's acceptance and handling of Plaintiff's service record and its undertaking to process his authorized leave and separation. Plaintiff alleges that failures in those tasks produced or perpetuated the status used to apprehend and confine him. The claimed breach therefore concerns performance of the undertaking, rather than advice upon which Plaintiff relied in choosing to act.

Under *Block*, the inquiry is whether the asserted duty and breach exist independently of a duty to communicate accurate information. Plaintiff's alleged surrender of his service record, the failure to complete processing and reconcile his status, and recovery of the record during confinement identify the operational undertaking at issue. Complaint ¶¶ 20–22, 49–61, 67–69.

Correctly communicating the disputed status to Plaintiff would not itself have completed separation processing, recovered a misplaced service record, or reconciled the allegedly conflicting leave and status actions. Those are the specific tasks on which Plaintiff relies to distinguish his claim from negligent informational guidance. The absence of Plaintiff's reliance

is relevant to that distinction, but the operational allegations—not terminology alone—supply its asserted basis.

The complaint identifies concrete conduct beyond supplying information for Plaintiff's guidance: allegedly failing to complete separation processing, misplacing the service record, and failing to reconcile leave and personnel-status actions before apprehension and confinement. It further alleges that counsel located the service record during confinement and that Plaintiff was released shortly afterward. Complaint ¶¶ 20–22, 49–61, 67–69. Plaintiff relies on that alleged sequence as part of the causal explanation of the deprivation of liberty, rather than treating an inaccurate label alone as the entire tort.

*Deloria v. Veterans Administration*, 927 F.2d 1009 (7th Cir. 1991), concerned allegations that VA officials distorted records to deprive a claimant of benefits. *Omegbu v. United States*, No. 10-C-765, 2011 U.S. Dist. LEXIS 77928 (E.D. Wis. July 18, 2011), applied the exception to incorrect criminal-history information in an immigration file and denial of naturalization. Plaintiff distinguishes those claims by identifying the antecedent undertaking and specific processing failures alleged here. The Court should examine that asserted independence under *Block*, rather than treating the involvement of personnel records as dispositive.

Plaintiff accordingly requests that the Court evaluate the particular duties, acts, and causal sequence pleaded. *Block* supplies the framework for the misrepresentation question; it does not by itself resolve every other exception to the FTCA's waiver. The confinement-related aspect of § 2680(h) is addressed separately below.

## A Applicable state law and the private-person analogue

The complaint's paragraph 10 should not be read to select Wisconsin substantive law merely because Plaintiff now resides there or experiences continuing effects there. Under 28 U.S.C. § 1346(b)(1), *Richards v. United States*, 369 U.S. 1, 11–13 (1962), requires the whole law, including choice-of-law rules, of the place where the alleged negligent act or omission occurred. Wisconsin residence supports the separate question of venue; it is not an independent FTCA choice-of-law rule.

The complaint locates the surrender, alleged misfiling, and recovery of Plaintiff's service record at NAVSTA Philadelphia and identifies Philadelphia personnel as responsible for separation processing. Complaint ¶¶ 17, 20, 45, 60, 67–69. Those allegations support applying Pennsylvania choice-of-law rules to the Philadelphia conduct. Pennsylvania uses a flexible analysis of the policies and interests underlying the particular issue, rather than an automatic rule based solely on the location of injury. *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805–06 (Pa. 1964). Plaintiff was also sent on administrative leave to Green Bay, Wisconsin, to await completion of ADSEP and his paperwork. Wisconsin's connection therefore includes his authorized location during the disputed processing, not merely his present residence or continuing effects. That circumstance must be considered in the applicable state-interest analysis. It does not, by itself, establish that an omission by personnel responsible for processing elsewhere occurred in Wisconsin. The places where the relevant duties should have been performed, and any material causal acts in other states, must also be evaluated. See *Bowen v. United States*, 570 F.2d 1311, 1318 (7th Cir. 1978). Plaintiff preserves Wisconsin as potentially applicable and does not ask the Court to select Pennsylvania exclusively before resolving the relevant locations and choice-of-law analysis.

If Pennsylvania substantive law applies, it supplies a concrete employment-records analogue. *Quinones v. United States*, 492 F.2d 1269, 1276–78 (3d Cir. 1974), predicted that Pennsylvania would recognize an employer's duty of reasonable care in maintaining employment records, with liability dependent on breach, proximate causation, and injury. *Bulkin v. Western Kraft East, Inc.*, 422 F. Supp. 437, 442–44 (E.D. Pa. 1976), applied that reasoning to a private employer. These decisions support a comparison with a private employer that undertakes custody and administration of employment and separation records. The comparison concerns care in performing that undertaking; it does not posit a private power to discharge a service member or exercise military authority. *United States v. Olson*, 546 U.S. 43, 46–47 (2005), requires analogous private conduct under like circumstances.

The proposed private analogue is an employer accepting custody of an employee's records and undertaking to administer leave and separation, with a duty to exercise reasonable care in that undertaking. Plaintiff alleges breach through misplacement of the accepted record and failure to complete or reconcile the processing, and causation through use of the resulting unresolved status to continue his confinement until the record was located. *Quinones* and *Bulkin* support examination of a Pennsylvania duty concerning employment records; they are persuasive federal applications of state law, rather than controlling Pennsylvania Supreme Court or Seventh Circuit decisions. The pleaded causal connection remains subject to proof. Military regulations may inform the undertaking and breach, but the FTCA requires the state-law private analogue.

If Wisconsin substantive law applies, Plaintiff alternatively invokes its ordinary-care standard. *Behrendt v. Gulf Underwriters Insurance Co.*, 2009 WI 71, ¶¶ 17–23, 318 Wis. 2d 622, 768 N.W.2d 568, explains the general duty of ordinary care and the need to evaluate the conduct and foreseeable risk in its actual circumstances. Plaintiff's proposed comparison remains a private

employer undertaking custody and administration of employment and separation records. He alleges that the Navy accepted his record, undertook separation processing, and failed to reconcile the records used to deprive him of liberty. *Behrendt* does not itself decide negligent personnel-record maintenance or military confinement; Plaintiff must establish that analogous private conduct would be actionable and that the alleged failures caused compensable injury. Plaintiff preserves this alternative rather than assuming Wisconsin law applies solely because he was present there.

The state-law duty inquiry also remains distinct from federal immunity. *Quinones* addressed the libel-and-slander exception, and other circuits have rejected attempts to recast reputational injuries as negligent recordkeeping. See *Talbert v. United States*, 932 F.2d 1064, 1066–67 (4th Cir. 1991). Plaintiff relies on the employment-records cases to identify a duty and private analogue, while relying on *Block* and the specific operational allegations to answer the Government's misrepresentation argument. His claim for actual loss of liberty requires that independent analysis; the existence of a state-law negligence theory alone does not establish a waiver of sovereign immunity.

Plaintiff requests consideration of this identified undertaking, breach, and causal sequence under the governing state law and the separate federal immunity rules. If additional allegations are needed to identify the applicable duty, location of the relevant conduct, or comparable private conduct, Plaintiff requests leave to amend to supply supported particulars unless amendment would be futile.

**B Confinement requires separate consideration under section 2680 h**

Section 2680(h) also lists false arrest and false imprisonment. Although the Government's developed argument focuses on misrepresentation, the nature of the confinement claim must be examined independently. A negligence label cannot alone avoid those exclusions. In *Snow-Erlin v. United States*, 470 F.3d 804, 808–09 (9th Cir. 2006), the court held that a claim alleging negligent calculation of a release date arose from false imprisonment because the claim depended on the excessive confinement itself. That nonbinding decision identifies a separate issue from the reliance-based misrepresentation analysis in *Block*.

Plaintiff's asserted distinction is the antecedent undertaking to safeguard his accepted service record and complete leave and separation processing, rather than a challenge limited to calculation of a custodial release date. Whether that undertaking supports a claim independent of an excluded tort requires examination of its substance. The fact that the alleged injury includes confinement does not dispense with that inquiry; neither does an allegation of antecedent negligence establish independence by itself.

The law-enforcement proviso supplies a distinct statutory route for specified intentional torts, including false arrest and false imprisonment, committed within the scope of employment by federal investigative or law-enforcement officers. Such officers must be empowered by law to execute searches, seize evidence, or make arrests for violations of federal law. *Millbrook v. United States*, 569 U.S. 50, 54–57 (2013), holds that the proviso is not confined to conduct occurring during an actual search, seizure, or arrest. It does not extend to every federal employee or waive the misrepresentation exception.

The present record does not identify the statutory powers of each relevant federal actor sufficiently to invoke the proviso categorically. Plaintiff requests that the Court distinguish the

asserted independent-negligence theory from any false-arrest or false-imprisonment characterization. If the latter becomes a ground for dismissal, Plaintiff requests an opportunity to address that ground and, where supported by facts, seek amendment identifying the relevant actors, their authority, their conduct, and its causal role. This request does not assume that a Navy personnel representative qualifies as a law-enforcement officer or that discovery alone establishes a waiver.

## III Claims concerning confinement must be distinguished from review of VA benefits decisions

The Government also argues that an FTCA action cannot circumvent the statutory review scheme for veterans' benefits. Plaintiff's complaint includes impaired access to benefits among the alleged consequences and damages, and that language must be addressed rather than ignored. But the complaint also alleges confinement, loss of liberty, and related emotional injury caused by Navy conduct in 1991 and 1992. Complaint ¶¶ 1–5, 64–69, 84–93.

Under 38 U.S.C. § 511(a), the Court cannot use this action to review an individual benefits determination outside the authorized statutory process. Plaintiff does not ask the Court in this action to reverse a VA determination or order payment of a VA award. The Navy conduct alleged to have produced confinement must be distinguished from a determination of entitlement to benefits. References to VA proceedings also explain Plaintiff's efforts to investigate and challenge the military records; that evidentiary role does not itself require the Court to review a benefits award or denial.

To the extent a requested category of benefits-related damages would require the Court to determine that a VA eligibility or payment decision was wrong, Plaintiff requests that the Court

analyze that category separately. The Government's benefits-review argument does not, without further analysis, establish that every claim for loss of liberty or emotional injury arising from the alleged Navy conduct is itself an impermissible request for VA benefits.

**Conclusion**

Plaintiff respectfully requests denial of Defendant's motion to dismiss. The limitations defense should be evaluated under Rule 12(b)(6), including the supported factual explanation for equitable tolling. The immunity analysis should examine the particular operational undertaking, the conduct alleged, and the statutory exceptions separately. Any benefits-related relief requiring review of a VA decision should be distinguished from the claim concerning Navy confinement. Alternatively, Plaintiff requests leave to amend curable deficiencies and, if the limitations issue is converted under Rule 12(d), a reasonable opportunity to present pertinent material concerning causal knowledge, official advice, record access, diligence, and the periods for which tolling is sought.

Dated: 10/19/26
Respectfully submitted,

______________________________

Adam Miles Sturdevant, Plaintiff, pro se
1049 Dousman Street
Green Bay, WI 54303
Telephone: (920) 888-6868
Email: adam.sturdevant.psyd@gmail.com